UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

ROBERT COVINO,

                    Plaintiff,

v.                                              CASE NO.: 2:16-cv-02264-SRC-CLW

WELLS FARGO BANK,

                                                **FIRST AMENDED COMPLAINT**

                    Defendant(s).

The plaintiff, Robert Covino, by and through counsel, the Law Offices of Joseph A. Chang by way of his First Amended Complaint against the defendant, Wells Fargo Bank herein says:

## INTRODUCTION

Plaintiff brings this action under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, et seq. (RESPA), the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-1692p, and the New Jersey Consumer Fraud Act. Plaintiff's action also sounds in common law fraud and the intentional and negligent infliction of emotional distress.

Plaintiff's action surrounds his multiple attempts, as successor-in-interest to his deceased parent's Estate, at obtaining a loan modification or other loss mitigation relief from defendant. Defendant's failure to properly identify Mr. Covino as successor-in-interest, its failure to understand and/or implement internal policies and procedures for successors-in-interest and the like resulted in the need for plaintiff to seek counsel and ultimately lose his parents' home in a foreclosure. Plaintiff transmitted multiple "Notices of Error" and "Requests for Information" to defendant Wells Fargo who has failed to provide a complete response. Plaintiff diligently attempted to obtain the information from Defendant, without success.

Wells Fargo Bank has failed to:

A. Properly identify plaintiff as a successor-in-interest;

B. Properly identify Plaintiff's special circumstances resulting from the death of the mortgagors, and Plaintiff's subsequent inheritance of his parents' Estate

C. Properly respond to the multiple Notices of Error and Requests for Information, as aforementioned. The response provided by defendant was grossly inadequate with defendant merely providing copies of the Notices of Error and Requests for Information, the Mortgage and Note executed by plaintiff's parents, the forced place insurance policy and scant correspondence advising plaintiff he was denied for a loan modification.

D. Provide the basis for their denial of plaintiff's loss mitigation application.

E. Provide the documents or information upon which they based their decision that Plaintiff did not qualify for a loan modification or other loss mitigation options.

F. Provide the documents reviewed in denying the subject loan modification and those reviewed in support of their written decision.

Defendant's egregious failures lead to plaintiff's inability to modify the loan and commence regular mortgage payments on the inherited property. Plaintiff made multiple attempts to obtain information to enable him to maintain the subject property, however defendant continued with the foreclosure and ultimately proceeded to a Sheriff's Sale in March 2016. Defendant's prosecution of the foreclosure and resulting Sheriff's Sale was without having provided adequate response to the Notices/Requests previously mentioned.

2

Pursuant to Dodd Frank and Regulation X, a complete and proper response was due within ten (10) days of their receipt of Plaintiff's request.

## PARTIES

1.     At all times relevant, Plaintiff Robert Covino ("Plaintiff") owned real property located at and commonly known as 6 Andover Avenue, in the Borough of Dumont, County of Bergen and State of New Jersey (the "Property").

2.     At all times relevant, Defendant Wells Fargo Bank ("Defendant"), having an address of P.O. Box 10335, Des Moines, Iowa, is a National Bank, providing residential mortgages and mortgage servicing.

3.     At all times relevant, Defendant Wells Fargo Bank was the owner of the Note and Mortgage and all rights, title and interest to the Judgment and the Property.

4.     At all times relevant, Defendant was also the servicer of the loan.

## JURISDICTION AND VENUE

5.     This Court has *in personam* jurisdiction over Defendant because a substantial part of the wrongdoing alleged in this Complaint took place in the State of New Jersey and Defendant regularly does business in the State of New Jersey.

6.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the action concerns a dispute involving federal questions.

7.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claims in this Complaint occurred in this district, Plaintiff maintained the property as his primary residence in this district subsequent to his parents' deaths, and the Defendants conduct business within this district occurred within the State of New Jersey in the United States of America.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

9.      Plaintiff incorporates each and every paragraph of the Complaint as if fully set forth herein.

10.      The subject loan originated with Wachovia merged with Wells Fargo, which then became the owner of the Note and at which time it became the servicer of the mortgage.

11.      Plaintiff's parents, Rudolph Covino and Anna Covino passed away in or about 2006 and 2008, respectively, wherein the plaintiff, Robert Covino became the successor of the property.

12.      The mortgage loan in question went into a default status subsequent to the death of plaintiff's parents.

13.      A foreclosure suit was filed with the Superior Court of New Jersey on October 23, 2009. Defendant failed to properly serve the plaintiff and Estate of plaintiff's parents.

14.      Durkin & Durkin were the attorney for Wells Fargo Bank; Shapiro & DeNardo was thereafter substituted.

15.      Plaintiff, at all times relevant hereto, made numerous attempts through counsel to resolve the default and amicably resolve the foreclosure.

16.    Plaintiff advised Defendant of the deaths of his parents, provided Defendant proof of the deaths and Probate proceedings and simultaneously requested information and documentation to enable him to become current on the property and assume the mortgage in his name, alone.

17.    Defendant failed to provide modification and or loan resolution documents at any time after the default of the mortgage despite repeated requests for same by counsel for plaintiff made directly to Wells Fargo's loss mitigation department.

18.    On or about May 5, 2014, final judgment was entered against the plaintiff.

19.    On or about June 30, 2015, Plaintiff, by and through counsel submitted to Wells Fargo Bank, via Certified US Mail, a Notice of Error (NOE), pursuant to 12 C.F.R. §1024.35 of Regulation X of the Mortgage Servicing Act under RESPA, which Regulation become effective on January 10, 2014, hereinafter "Regulation X". Additionally, the undersigned submitted the NOE to the defendant's legal counsel.

20.    On or about August 7, 2015, plaintiff sent another Notice of Error when defendant failed to respond.

21.    Defendant responded to plaintiff's requests by way of a letter dated August 12, 2015 stating they were reviewing Plaintiff's inquiry and that they would respond with results on or before August 24, 2015.

22.    Wells Fargo also responded directly to Plaintiff stating that they would provide a response by August 27, 2015.

5

23.     Wells Fargo Bank's letter dated August 17, 2015 denied the plaintiff of any loss mitigation options and merely stated that "We previously reviewed the account and were unable to approve any loss mitigation options.  The account is due for the February 15, 2009 through July 15, 2015 payments totaling $61,095.95" **Exhibit "A"**

24.     Wells Fargo's letter dated August 24, 2015 stated, in part, "[W]e've found that no error occurred and won't be making any adjustments to your account....We wanted to let you know how we determined no error occurred,...Response letter On August 17, 2015 we mailed you our response to your request...." **Exhibit "B"**

25.     Defendant's responses failed to address that the mortgage and note were not held in Plaintiff's name but, rather, in the name of his now deceased parents.

26.     Defendant's responses failed to address loss mitigation options available to successors-in-interest.

27.     Defendant's responses failed to address policies and procedures in place for successors-in-interest.

28.     Plaintiff did not default on the mortgage note as the mortgage note was not in his name.

29.     Defendant failed to address that plaintiff was not the mortgagor.

30.     On August 25, 2015, defendant sent another letter to the Plaintiff, stating further information would be forthcoming, no information was sent thereafter.

31.     On or about October 20, 2015, plaintiff made another attempt to obtain loss mitigation information and documentation. Defendant failed to respond.

6

32.    Plaintiff requested information regarding the denial of his request for a loan modification under the successor in interest guidelines.  Defendant verbally advised Plaintiff his modification was denied because "the loan was affordable." Defendant offered no other response either written or verbal.

33.    Defendant's statement to plaintiff lacks any foundation as plaintiff is the successor-in-interest to his parents' Estate.

34.    Despite the several attempts to resolve the issues with Wells Fargo Bank, they scheduled a Foreclosure Sale on October 23, 2015.

35.    Plaintiff's loan modification was never given proper consideration.

36.    Another Notice of Error was sent to defense counsel on February 23, 2016.

37.    Plaintiff wrote to defendant March 9, 2016, after defendant failed to respond.

38.    Counsel for defendant responded by way of May 25, 2016 correspondence. **Exhibit "C"**. Said correspondence still fails to address the Plaintiff's status as successor-in-interest.

39.    Plaintiff filed the first Complaint on April 21, 2016.

40.    Plaintiff's Complaint was dismissed without prejudice and the Court granted plaintiff leave to amend.

## COUNT ONE
## DEFENDANT VIOLATED REAL ESTATE SETTLEMENT PROCEDURES ACT, 12 USC 2601 et seq ("RESPA")("REGULATION Z")

41.    Plaintiff incorporates paragraphs 1 through 41 of the Complaint as if fully set forth herein.

42.     Pursuant to 12 CFR 1024.5(a), RESPA is applicable to all "federally related mortgage loans" as defined by 12 CFR 1024.2(b). Accordingly, the Loan in the instant matter is a federally related mortgage loan as defined by 12 CFR 1024.2(b).

43.     Defendant is subject to the aforesaid Regulations and does not qualify for the exception for "small servicers" as such term is defined in 12 CFR 1026.41€(4), nor the exemption for a "qualified lender" as such term is defined in 12 CFR 617.700.

44.     12 CFR 1024.35(d) requires a servicer who receives an NOE to acknowledge receipt of a NOE within five days.

45.     12 CFR 1024.35(e)(1) requires, with certain exceptions inapplicable to this action, that servicers respond to a NOE by:

a.     Correcting the errors identified by the borrowers and providing the borrower with written notification of the correction, the effective date of the correction, and contact information, including a telephone number for further assistance; or

b.     Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrowers right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number for further assistance.

46.     12 CFR 1024.36(c) requires a servicer who receives a Request for Information (RFI) to acknowledge receipt in writing within five days (excluding holidays and weekends).

8

47.     12 CFR 1024.36(d)(1) requires servicers, with certain exceptions inapplicable to this action, to respond to the RFI by either;

a.     Providing the borrower with the requested information and contact information, including a telephone number for further assistance in writing; or

b.     Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

48.     12 CFR (d)(2)(i)(B) requires servicers to comply with the foregoing no later than 30 days; or

a.     Extend the time period for responding by an additional 15 days if, before the end of the 30 day period, the servicer notifies the borrower of the extension and the reasons for the extension in writing,

49.     Defendant's actions in failing to properly respond to three different NOEs from the plaintiff constitute a clear, distinct and willful violation of these statutes.

50.     Upon information and belief, the foregoing willful violations are part of a pattern and practice of behavior in conscious disregard for the rights of borrowers as well as Plaintiff as successor-in-interest.

51.     Plaintiff has a private right of action under RESPA pursuant to 12 USC 2605(f) for the claimed breaches, and such action provides for remedies including actual damages, costs, statutory damages and attorney's fees.

9

WHEREFORE, plaintiff demands judgment against the defendant awarding;

A.  Compensatory Damages;

B.  Incidental Damages;

C.  Nominal and punitive damages;

D.  Statutory damages, and

E.  All such other damages as allowed by law;

F.  Costs of suit;

G.  Attorney's fees; and

H.  Granting such other relief as this Court may deem equitable and just.

## COUNT TWO
## DEFENDANT VIOLATED FAIR DEBT COLLECTION PRACTICES ACT

52.  Plaintiff repeats each and every allegation contained in paragraphs 1 through 51 as if set forth at length herein.

53.  The Fair Debt Collection Practices Act came into effect on March 20, 1978 which requires debt collectors to follow strict guidelines when attempting to resolve a debt.

54.  A debt collector may not use any false, deceptive or misleading representation or means in connection with the collection of any debt.

55.  Defendant has violated the Act.

56.  Defendant attempted to serve a foreclosure Complaint upon plaintiff's parents, Rudolph and Anna Covino.

57.     Plaintiff advised the process server that his parents were deceased.

58.     Defendant filed an Amended Complaint. Defendant named plaintiff, Robert Covino, as well as his brother, Edward Covino, as direct party defendants.

59.     Plaintiff failed to effectuate proper service upon Plaintiff.

60.     Defendant obtained default against plaintiff.

61.     Plaintiff was not the deeded owner of the property in question at the time the Amended Complaint was filed or when default was obtained.

62.     On August 26, 2014 plaintiff, through counsel, wrote to defense counsel advising that Robert Covino was not the owner of the property and requesting defendant withdraw the foreclosure. **Exhibit "D"**

63.     On or about September 30, 2014, Plaintiff applied for and was awarded Letters Testamentary to enable him to administer his parents' Estate.

64.     Plaintiff through counsel contacted defendant to commence loss mitigation assistance.

65.     Defendant refused to assist plaintiff because he was not the record owner of the property. **Exhibit "E"**

66.     Plaintiff caused a Deed to be prepared and recorded transferring the property in question into his name.

67.     On March 20, 2015 plaintiff transmitted his first modification application to defendant.

68.     On May 1, 2015 Jen Lunsford from defendant's "Deceased Department" advised defense counsel that the loan modification was denied. Ms. Lunsford stated that the issue was not affordability because plaintiff could afford the loan, but it was because of the death of plaintiff's parents and the past due amount.

69.     On May 7, 2015 plaintiff through counsel appealed the denial of the loan modification.

70.     On June 1, 2015 Jenn Lunsford from defendant's "Deceased Department" called counsel for plaintiff to advise that the appeal was denied for the same reason as the loan modification.

71.     After the rejection of the modification, defendant failed to provide any further remediation assistance.

72.     Defendant continued the foreclosure lawsuit against plaintiff when defendant knew and was on notice that plaintiff was not obligated under the Note and Mortgage.

73.     By virtue of defendant's foreclosure action, it violated plaintiff's rights under the Fair Debt Collection Practices Act.

74.     As a direct and proximate result of defendant's actions as aforesaid, Plaintiff has been severely damaged.

WHEREFORE, plaintiff demands judgment against the defendant awarding;

A.     Compensatory Damages;

B.     Incidental Damages;

C.     Nominal and punitive damages;

D.   Statutory damages, and

E.   All such other damages as allowed by law;

F.   Costs of suit;

G.   Attorney's fees; and

H.   Granting such other relief as this Court may deem equitable and just.

## COUNT THREE
## DEFENDANT VIOLATED THE NEW JERSEY CONSUMER FRAUD ACT

75.   Plaintiff repeats each and every allegation contained in paragraphs 1 through 74 as if set forth at length herein.

76.   Pursuant to the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et  seq; "it is unlawful for any person to use or employ unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or to knowingly conceal, suppress, or omit any material fact with intent that others rely on the concealment, suppression or omission in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, or not any person has in fact been mislead, deceived or damaged thereby.

77.   Defendant permitted the property in question to be sold through Sheriff's Sale.

78.   Defendant knew and was on notice that plaintiff was not obligated on the Note and Mortgage.

79.   Defendant knew and was on notice that plaintiff was a successor-in-interest in and to the property in question and encouraged plaintiff to apply for a loan modification.

13

80.   Defendant continued to proceed with the foreclosure and scheduling of a Sheriff's Sale while plaintiff's modification application was pending

81.   The foregoing practices of Defendants constitute an unconscionable practice as defined by the Consumer Fraud Act.

82.   Plaintiff made several attempts to obtain a loan modification to which the defendant improperly rejected.

83.   Defendant set forth a Sheriff's Sale and foreclosure suit without attempting to remedy the defaulted loan with the plaintiff.

84.   Under the Consumer Fraud Act, the plaintiff is entitled to treble damages for the foregoing act of consumer fraud.

85.   As a direct and proximate result of the defendant's actions as aforesaid, plaintiff has suffered severe and irreparable damages.

WHEREFORE, plaintiff demands judgment against the defendant awarding;

A.   Compensatory Damages;

B.   Incidental Damages;

C.   Nominal and punitive damages;

D.   Statutory damages, and

E.   All such other damages as allowed by law;

F.   Costs of suit;

G.   Attorney's fees; and

H.   Granting such other relief as this Court may deem equitable and just.

14

## COUNT FOUR

### DEFENDANT DENIED PLAINTIFF DUE PROCESS

77.     Plaintiff repeats each and every allegation contained in paragraphs 1 through 76 as if set forth at length herein.

78.     Defendant brought a foreclosure action against the Plaintiff on or about October 23, 2009.

79.     Defendant attempted to serve the Complaint upon Rudolph Covino and Anna Covino upon plaintiff.

80.     Plaintiff advised defendant that both Rudolph Covino and Anna Covino were deceased.

81.     Plaintiff amended its Complaint to name plaintiff as a direct party defendant to the foreclosure action.

82.     Defendant failed to serve the Amended Complaint upon the plaintiff.

83.     Defendant obtained default and ultimately a Final Judgment in foreclosure against defendant without adequate service of process upon plaintiff.

84.     Defendant was on notice of its failure to adequately serve process upon plaintiff.

85.     Defendant was on notice of the error in naming plaintiff as a direct party defendant to the foreclosure lawsuit when it knew or reasonably should have known that plaintiff was not the responsible party under the Note and Mortgage.

86.     As a direct and proximate result of defendant's actions, the plaintiff suffered damages.

WHEREFORE, Plaintiff demands judgment against the Defendant awarding;

A.     Compensatory Damages;

B.     Incidental Damages;

C.     Nominal and Punitive Damages;

D.     Statutory Damages; and

E.     All such other damages as allowed by law;

F.     Costs of Suit;

G.     Attorney's Fees; and

H.     Granting such other relief as this Court may deem equitable and just.

**LAW OFFICES OF JOSEPH A. CHANG**
**Attorneys for Plaintiff**

Dated:  August 15, 2016                BY: S/Joseph A Chang/ch
                                       Joseph A. Chang

16

<u>CERTIFICATION OF SERVICE PURSUANT TO N.J.S.A. 56-8:20</u>

As required by <u>N.J.S.A.</u> 56-8:20, the undersigned hereby certifies that on the below referenced date they caused a copy of the complaint to be served upon the following offices via Federal Express to Office of the Attorney General, 25 Market Street, 8th West, Trenton, New Jersey 08611-2148.

LAW OFFICES OF JOSEPH A. CHANG
Attorneys for Plaintiff

Dated:  August 15, 2016                    By: S/ Joseph A Chang/da
                                                  Joseph A Chang

<u>JURY DEMAND</u>

The Plaintiff demands a trial by a jury on all of the triable issues of this Amended Complaint.

Dated:  August 15, 2016             S/ Joseph A Chang/da
                                           Joseph A. Chang
                                           Attorney for Plaintiff

17

# EXHIBIT A



Wells Fargo
PO Box 10335
Des Moines, IA 50306

August 17, 2015

Joseph A. Chang
Joseph A Chang & Associates LLC
951 Madison Avenue
Paterson, NJ 07501

Subject: Regarding Rudolph Covino and Anna Covino

Dear Mr. Joseph A. Chang:

Addressing our customer's concerns is important to us and I thank you for the opportunity to assist you. I'm responding on behalf of Wells Fargo Bank to the inquiry received in our office on July 10, 2015.

## Account status

We previously reviewed the account and were unable to approve loss mitigation options. The account is due for the February 15, 2009, through July 15, 2015, payments totaling $61,095.95

The amounts stated above are provided for informational purposes only; this isn't intended to be a reinstatement quote.

On August 17, 2009, we initiated foreclosure proceedings on the account. A foreclosure sale date has been scheduled for October 23, 2015.

## Transaction history

In response to your request, enclosed is an account history from June 05, 2010 through March 09, 2015.

## Loan validation

This account originated with Wachovia Bank. Wachovia Bank merged with Wells Fargo Bank and this account is now owned and serviced by Wells Fargo. We've included copies of the Note and Mortgage for further details. These documents validate the origination of this account.

## Additional information

We've reviewed your request for information about the activity on this account. We've enclosed the following items:

- Security Instrument and Assignments, if applicable
- Promissory Note and any applicable riders
- Loan Information Report
- The recently received correspondence that initiated the request

We're unable to provide any further information because your remaining requests are too broad. If you provide us with more specific details about what you're seeking, we'll review your request again.

Rudolph Covino
August 17, 2015
Page 2

**Going forward**

If you have any additional questions or need clarification regarding the information provided in this letter, please contact me directly at 1-800-853-8516, extension 58001. I am available to assist you Monday through Friday, 8:00 a.m. to 5:00 p.m. Central Time. If you require immediate assistance and I am unavailable, other representatives are available to assist you at 1-800-853-8516, Monday through Friday, 7:00 a.m. to 7:00 p.m. Central Time.

Sincerely,

Yohan Rozairo
Home Equity Executive Mortgage Specialist
Customer Care and Recovery Group

Enclosures (s)

Wells Fargo is required by the Fair Debt Collection Practices Act to inform you that, as the loan servicer, we are attempting to collect a debt, and any information obtained will be used for that purpose. However, if the borrower has received a discharge from bankruptcy, and the loan was not reaffirmed in the bankruptcy case, Wells Fargo will only exercise its rights against the property and is not attempting any act to collect the discharged debt from the borrower personally.

With respect to those loans located in the State of California, the state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact the borrower before 8 a.m. or after 9 p.m. They may not harass the borrower by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call the borrower at work if they know or have reason to know that they may not receive personal calls at work. For the most part, collectors may not tell another person, other than the attorney or borrower's spouse, about the debt. Collectors may contact another person to confirm the borrower's location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

# EXHIBIT B



Wells Fargo
PO Box 10335
Des Moines, IA 50306

August 24, 2015

Joseph A. Chang
Joseph A. Chang & Associates, L.L.C.
951 Madison Avenue
Paterson, NJ 07501

Subject:     Regarding Rudolph Covino and Anna Covino

Dear Mr. Joseph A Chang:

Thank you for the opportunity to address your concern. We've carefully researched this matter and are providing you with a response.

**Request for information**

After reviewing your concern, we've found no error occurred and won't be making any adjustments to your account. We wanted to let you know how we determined no error occurred, so we've enclosed the following document we used in our research:

- Response letter
  - On August 17, 2015, we mailed you our response to your request. Enclosed is a copy of that letter.

**Going forward**

If you have any questions or would like to request documents about the information in this letter, I'm here to help. You may reply to me at the return address on this letter, or you may reach me directly at 1-800-853-8516, extension 58001. I am available to assist you Monday through Friday, 8:00 a.m. to 5:00 p.m. Central Time. If you require immediate assistance and I am unavailable, other representatives are available to assist you at 1-800-853-8516, Monday through Friday, 7:00 a.m. to 7:00 p.m. Central Time.

Sincerely,

Yohan Rozairo
Home Equity Executive Mortgage Specialist
Customer Care and Recovery Group

Enclosure

Wells Fargo is required by the Fair Debt Collection Practices Act to inform you that, as the loan servicer, we are attempting to collect a debt, and any information obtained will be used for that purpose. However, if the borrower has received a discharge from bankruptcy, and the loan was not reaffirmed in the bankruptcy case, Wells Fargo will only exercise its rights against the property and is not attempting any act to collect the discharged debt from the borrower personally.

With respect to those loans located in the State of California, the state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact the borrower before 8 a.m. or after 9 p.m. They may not harass the borrower by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call the borrower at work if they know or have reason to know that they may not receive personal calls at work. For the most part, collectors may not tell another person, other than the attorney or borrower's spouse, about the debt. Collectors may contact another person to confirm the borrower's location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

RM9/co1476096/ge4120777/dWFF



Wells Fargo
PO Box 10335
Des Moines, IA 50306

August 17, 2015

Joseph A. Chang
Joseph A Chang & Associates LLC
951 Madison Avenue
Paterson, NJ 07501

Subject: Regarding Rudolph Covino and Anna Covino

Dear Mr. Joseph A. Chang:

Addressing our customer's concerns is important to us and I thank you for the opportunity to assist you. I'm responding on behalf of Wells Fargo Bank to the inquiry received in our office on July 10, 2015.

**Account status**

We previously reviewed the account and were unable to approve loss mitigation options. The account is due for the February 15, 2009, through July 15, 2015, payments totaling $61, 095. 95

The amounts stated above are provided for informational purposes only; this isn't intended to be a reinstatement quote.

On August 17, 2009, we initiated foreclosure proceedings on the account. A foreclosure sale date has been scheduled for October 23, 2015.

**Transaction history**

In response to your request, enclosed is an account history from June 05, 2010 through March 09, 2015.

**Loan validation**

This account originated with Wachovia Bank. Wachovia Bank merged with Wells Fargo Bank and this account is now owned and serviced by Wells Fargo. We've included copies of the Note and Mortgage for further details. These documents validate the origination of this account.

**Additional information**

We've reviewed your request for information about the activity on this account. We've enclosed the following items:

- Security Instrument  and Assignments, if applicable
- Promissory Note and any applicable riders
- Loan Information Report
- The recently received correspondence that initiated the request

We're unable to provide any further information because your remaining requests are too broad. If you provide us with more specific details about what you're seeking, we'll review your request again.

Rudolph Covino
August 17, 2015
Page 2

**Going forward**

If you have any additional questions or need clarification regarding the information provided in this letter, please contact me directly at 1-800-853-8516, extension 58001. I am available to assist you Monday through Friday, 8:00 a.m. to 5:00 p.m. Central Time. If you require immediate assistance and I am unavailable, other representatives are available to assist you at 1-800-853-8516, Monday through Friday, 7:00 a.m. to 7:00 p.m. Central Time.

Sincerely,

Yohan Rozairo
Home Equity Executive Mortgage Specialist
Customer Care and Recovery Group

Enclosures (s)

Wells Fargo is required by the Fair Debt Collection Practices Act to inform you that, as the loan servicer, we are attempting to collect a debt, and any information obtained will be used for that purpose. However, if the borrower has received a discharge from bankruptcy, and the loan was not reaffirmed in the bankruptcy case, Wells Fargo will only exercise its rights against the property and is not attempting any act to collect the discharged debt from the borrower personally.

With respect to those loans located in the State of California, the state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact the borrower before 8 a.m. or after 9 p.m. They may not harass the borrower by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call the borrower at work if they know or have reason to know that they may not receive personal calls at work. For the most part, collectors may not tell another person, other than the attorney or borrower's spouse, about the debt. Collectors may contact another person to confirm the borrower's location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

# EXHIBIT C



# ReedSmith

Laura K. Conroy
Direct Phone: +1 609 514 5956
Email: lconroy@reedsmith.com

Reed Smith LLP
Princeton Forrestal Village
136 Main Street - Suite 250
Princeton, NJ 08540-7839
+1 609 987 0050
Fax +1 609 951 0824
reedsmith.com

May 25, 2016

**_Via Email and Regular Mail_**

Joseph A. Chang, Esq.
Joseph A. Chang & Associates, LLC
951 Madison Avenue
Paterson, NJ 07501

   **_Re:_**   **_Robert Covino v. Wells Fargo Bank, N.A.._**
          **_U.S.D.C. District of New Jersey, No. 2:16-cv-02264-CCC-MF_**

Dear Mr. Chang:

   Your letter and electronic inquiries of March 9, 2016 titled "Notice of Error" to Wells Fargo Bank, N.A. (the "Servicer") regarding the above referenced account have been forwarded to me for response. Your March 9, 2016 correspondence asserts as an error that you have not received a response to your letter of June 30, 2015.

   In your June 30, 2015 letter, you request a broad range of information, however we do not believe that your letter of June 30, 2015 was an appropriate Qualified Written Request ("QWR") under either 12 C.F.R. § 1024.35 or § 1024.36. The information requested in your letter was inappropriate as falling within one of the several exemptions to a valid QWR identified in Regulation X. See 12 C.F.R. § 1024.35(g) (overbroad notices); 12 C.F.R. § 1024.36(f) (confidential/proprietary information; overbroad/unduly burdensome). Moreover, in several instances, your request constitutes the very sort of fishing expedition designed to substitute for civil discover that the federal regulators had intended to avoid, and therefore cannot constitute a valid QWR. See 78 Fed. Reg. 10696, 10761 (Feb. 14, 2013). overbroad and constitutes a fishing expedition, in violation of 12 C.F.R. § 1024.36(f)(1)(iii) (requests for information that is not "directly related to the borrower's mortgage loan account"). Finally, your letter constitutes an improper attempt to belatedly appeal a loan modification denial, which has been rule as an impermissible basis for a valid QWR by the federal bankruptcy courts of New Jersey. See Wiggins v. Hudson City Savings Bank, 2015 WL 4638452 (Bankr.D.N.J. Aug. 4, 2015). In view of the reasons set forth above, and as discussed in greater detail below, we do not deem your June 30, 2015 letter to be a valid QWR and therefore the acknowledgement and response provisions contained in Regulation X are inapplicable.

   We do not believe that your June 30, 2015 letter constituted a valid request for information under 12 C.F.R. § 1024.36, and therefore any failure to acknowledge or respond to such letter could not have

NEW YORK ♦ LONDON ♦ HONG KONG ♦ CHICAGO ♦ WASHINGTON, D.C. ♦ BEIJING ♦ PARIS ♦ LOS ANGELES ♦ SAN FRANCISCO ♦ PHILADELPHIA ♦ PITTSBURGH
OAKLAND ♦ MUNICH ♦ ABU DHABI ♦ PRINCETON ♦ NORTHERN VIRGINIA ♦ WILMINGTON ♦ SILICON VALLEY ♦ DUBAI ♦ CENTURY CITY ♦ RICHMOND ♦ GREECE

Diane A. Bettino ♦ Office Administrative Partner ♦ A Limited Liability Partnership formed in the State of Delaware

Joseph A. Chang, Esq.
May 25, 2016
Page 2

**ReedSmith**

been erroneous for purposes of 12 C.F.R. § 1024.35. We will address each of your paragraphs requesting information below:[1]

1.  What steps, if any, have been taken to promptly identify and communicate with successors in interest?

**RESPONSE:** This request is irrelevant pursuant to 12 C.F.R. § 1024.36(f)(iii) ("not directly related to the borrower's mortgage loan account")(emphasis added), and unduly burdensome pursuant to 12 C.F.R. § 1024.36(f)(iv) ("An information request is unduly burdensome if a diligent servicer could not respond to the information request without . . . incurring costs (or dedicating resources) that would be unreasonable in light of the circumstances." Id. (emphasis added). Moreover, the fishing expedition that your letter represents is the very sort of request which federal regulators had intended to avoid in creating the exception for overbroad or unduly burdensome requests: "[T]he Bureau does not believe that the information request procedures should replace or supplant civil litigation document requests." 78 Fed. Reg. 10696, 10761 (Feb. 14, 2013). As such, a response is not required.

2.  What are you policies and procedures regarding Successors-in-Interest? (12 CFR 1024.38)

**RESPONSE:** This request is irrelevant pursuant to 12 C.F.R. § 1024.36(f)(iii) ("not directly related to the borrower's mortgage loan account," which may include internal guidelines or policies)(emphasis added), confidential, proprietary or privileged information pursuant to 12 C.F.R. § 1024.36(f)(1)(ii), and/or unduly burdensome pursuant to 12 C.F.R. § 1024.36(f)(iv) ("An information request is unduly burdensome if a diligent servicer could not respond to the information request without . . . incurring costs (or dedicating resources) that would be unreasonable in light of the circumstances." Id. (emphasis added). Moreover, the fishing expedition that your letter represents is the very sort of request which federal regulators had intended to avoid in creating the exception for overbroad or unduly burdensome requests: "[T]he Bureau does not believe that the information request procedures should replace or supplant civil litigation document requests." 78 Fed. Reg. 10696, 10761 (Feb. 14, 2013). As such, a response is not required.

3.  What is your definition of successor?

**RESPONSE:** Refer to the response to Question 2, above.

---

[1] Requests No. 1-4, 6-8, and 11-16 were also raised in your letter of February 18, 2016. This letter also serves as a response to the impropriety of those requests. Your letter of August 7, 2015 also requests the same information sought in Requests No. 6-13, and this letter also serves as a response to the impropriety of those requests.

Joseph A. Chang, Esq.
May 25, 2016
Page 3

**ReedSmith**

4.    What communication have you had with the Successors-in-Interest in compliance with the Early Intervention Rule 12 CFR §§1024.39?

**RESPONSE:** This generic request for communications with unspecified successors-in-interest does not appear to be addressed to a particular borrower, therefore, this request is irrelevant pursuant to 12 C.F.R. § 1024.36(f)(iii) ("not directly related to the borrower's mortgage loan account," which may include internal guidelines or policies)(emphasis added), confidential, proprietary or privileged information pursuant to 12 C.F.R. § 1024.36(f)(1)(ii), and/or unduly burdensome pursuant to 12 C.F.R. § 1024.36(f)(iv) ("An information request is unduly burdensome if a diligent servicer could not respond to the information request without . . . incurring costs (or dedicating resources) that would be unreasonable in light of the circumstances." Id. (emphasis added). Moreover, the fishing expedition that your letter represents is the very sort of request which federal regulators had intended to avoid in creating the exception for overbroad or unduly burdensome requests: "[T]he Bureau does not believe that the information request procedures should replace or supplant civil litigation document requests." 78 Fed. Reg. 10696, 10761 (Feb. 14, 2013). As such, a response is not required.

5.    Please identify the following:

(a)    The name of the owners or assignee of my clients' mortgage loan;

(b)    The address and telephone number for the owner or assignee of my clients' mortgage loan;

(c)    The name, position and address of an officer of the entity that is the owner or assignee of my clients' mortgage loan; and

(d)    Any other relevant contact information for the owner or assignee of my clients' mortgage loan.

**RESPONSE:** Information responsive to this request was already provided to you by letter of August 17, 2015.

In response to paragraphs (a) and (b) above: Wells Fargo Bank, N.A., c/o Wells Fargo Home Mortgage, P.O. Box 10335, Des Moines, IA 50306-0335 is the owner and servicer of this loan. Although we are providing the address for Wells Fargo, please be advised that this loan is in litigation. Wells Fargo may be contacted through Reed Smith LLP, 136 Main Street, Suite 250, Princeton, New Jersey 08540.

In response to paragraphs (c) and (d) above: Refer to the response to Question 2, above.

6.    Identify and briefly describe all loss mitigation options that were available to my clients from the owner or assignee of my clients' mortgage loan;

**RESPONSE:** A servicer's duties under § 1024.36 are not triggered where the request is "overbroad or unduly burdensome." 12 C.F.R. § 1024.36(f)(iv). Regulation X provides: "An

Joseph A. Chang, Esq.                                     **ReedSmith**
May 25, 2016
Page 4

information request is unduly burdensome if a diligent servicer could not respond to the
information request without . . . incurring costs (or dedicating resources) that would be
unreasonable in light of the circumstances." Id. (emphasis added). The Consumer Financial
Protection Bureau ("CFPB") has noted that examples of overbroad or unduly burdensome
requests might include requests for information that seek documents relating to substantially all
aspects of mortgage origination, servicing, sale or securitization and foreclosure, as well as
"requests for information that are not reasonably likely to assist a borrower with the borrower's
account." 12 C.F.R. Part 1024, Supp. I, Comment 36(f)(1)(iv). Additionally, your clients'
request for loss mitigation assistance was evaluated and denied, an appeal was not timely filed,
and no further review is required. See 12 C.F.R. § 1024.41(i) ("A servicer is only required to
comply with the requirements of [12 C.F.R. § 1024.41] for a single loss mitigation application
for a borrower's mortgage loan account."). Moreover, the U.S. Bankruptcy Court for the
District of New Jersey has held that attempts to seek review of a prior denial of a mortgage loan
loss mitigation application may not be sought through a QWR, and any attempt to do so does
not constitute a valid QWR. See Wiggins v. Hudson City Savings Bank, 2015 WL 4638452
(Bankr.D.N.J. Aug. 4, 2015). Finally, the fishing expedition that your letter represents is the
very sort of request which federal regulators had intended to avoid in creating the exception for
overbroad or unduly burdensome requests: "[T]he Bureau does not believe that the information
request procedures should replace or supplant civil litigation document requests." 78 Fed. Reg.
10696, 10761 (Feb. 14, 2013). On the foregoing basis, your request for information under this
paragraph is denied.

7.      Provide any notices sent to my clients advising them of the availability of loss mitigation
        options.

**RESPONSE:** Refer to the response to Question 6, above.

8.      For each loss mitigation application you have received from my clients during the
        applicable period, identify the following:

        (a)     The date it was received;

        (b)     The date you sent my clients an acknowledgement of receipt of the application;

        (c)     The date you determined it was complete; and

        (d)     A description of your evaluation of it, including your determination of which loss
                mitigation options were or were not offered to my clients.

**RESPONSE:** Refer to the response to Question 6, above.

9.      If any loss mitigation application you received from my clients is currently under review
        and is considered to be incomplete, provide a list of the additional documents and
        information my clients must submit to make the application complete, as well as any
        applicable deadline for returning such documents.

Joseph A. Chang, Esq.                                **ReedSmith**
May 25, 2016
Page 5

    **RESPONSE:** Refer to the response to Question 6, above.

10.    Identify any other documents or information not under the control of my clients needed to make the application complete.

    **RESPONSE:** Refer to the response to Question 6, above.

11.    If you have determined that a loan modification option is not available to my client because of a requirement or restriction imposed by the owner or assignee of my client's mortgage loan, provide the following:

    (a)    A description of the requirement or restriction and the identity of the owner or assignee of my client's mortgage loan, including the name of any applicable trusts and trustees;

    (b)    the document, or provision within the document, that contains the requirement or restriction, and information identifying the document sufficient to locate the document if it is publicly available;

    (c)    a description of your actions to seek a waiver of the requirement or restriction;

    (d)    any documents relating to your efforts to seek a waiver of the requirement or restriction, and whether such waiver request was approved or denied;

    (e)    any summary information created or retained by you pertaining to loan modifications available to my clients and investor restrictions applicable to my clients' loan or loans pooled with this loan; and

    (f)    any guidance provided to you by the owner or assignee pertaining to modifications applicable to my clients' loan.

    **RESPONSE:** Refer to the response to Question 6, above.

12.    If you have determined that a loan modification option is not available to my client for any other reason(s), describe in detail the reason(s) for denial and provide documentation of any reason(s) for denial.

    **RESPONSE:** Refer to the response to Question 6, above.

13.    Provide any notices or documents you sent to my client in relation to loss mitigation of the loan during the applicable period, including:

    (a)    any notices acknowledging receipt of any loss mitigation application from them and stating whether the application was complete or incomplete;

    (b)    any notices stating the outcome of your evaluation of their application;

Joseph A. Chang, Esq.
May 25, 2016
Page 6

**ReedSmith**

(c)    any proposed written agreement that offered a loss mitigation option to my clients;

(d)    any written agreement signed by my clients that provided for a loss mitigation option; and

(e)    any notices stating the outcome of their appeal of your denial of a loan modification option.

**RESPONSE:**  Refer to the response to Question 6, above.

14.    If you initiated a foreclosure proceeding against my clients during the applicable period, identify or provide the following:

(a)    the date the matter was referred to your attorney to being the legal foreclosure proceedings;

(b)    the date you or your attorney made the first notice or filing to being the foreclosure process, and a description of the actions taken;

(c)    a detailed description of why Robert Covino was made a party defendant;

(d)    a detailed description as to why the Estate of Rudolph Covino was not made a party defendant;

(e)    a detailed description of why service of the second amended complaint was not effected;

(f)    a listing of any dispositive motions filed and the date filed;

(g)    any steps taken to schedule the foreclosure sale, and the date those steps were taken;

(h)    the date of any scheduled or rescheduled foreclosure sale; and

(i)    any notices sent to my client about the foreclosure of their mortgage loan.

**RESPONSE:**  A servicer's duties under § 1024.36 are not triggered where the request is "overbroad or unduly burdensome." 12 C.F.R. § 1024.36(f)(iv).  Regulation X provides: "An information request is unduly burdensome if a diligent servicer could not respond to the information request without . . . incurring costs (or dedicating resources) that would be unreasonable in light of the circumstances." Id. (emphasis added).  The Consumer Financial Protection Bureau ("CFPB") has noted that examples of overbroad or unduly burdensome requests might include requests for information that seek documents relating to substantially all aspects of mortgage origination, servicing, sale or securitization and foreclosure, as well as "requests for information that are not reasonably likely to assist a borrower with the borrower's

Joseph A. Chang, Esq.
May 25, 2016
Page 7

**ReedSmith**

account." 12 C.F.R. Part 1024, Supp. I, Comment 36(f)(1)(iv). Additionally, your clients' request for loss mitigation assistance was evaluated and denied, an appeal was not timely filed, and no further review is required. See 12 C.F.R. § 1024.41(i) ("A servicer is only required to comply with the requirements of [12 C.F.R. § 1024.41] for a single loss mitigation application for a borrower's mortgage loan account."). Moreover, the U.S. Bankruptcy Court for the District of New Jersey has held that attempts to seek review of a prior denial of a mortgage loan loss mitigation application may not be sought through a QWR, and any attempt to do so does not constitute a valid QWR. See Wiggins v. Hudson City Savings Bank, 2015 WL 4638452 (Bankr.D.N.J. Aug. 4, 2015). Finally, the fishing expedition that your letter represents is the very sort of request which federal regulators had intended to avoid in creating the exception for overbroad or unduly burdensome requests: "[T]he Bureau does not believe that the information request procedures should replace or supplant civil litigation document requests." 78 Fed. Reg. 10696, 10761 (Feb. 14, 2013). On the foregoing basis, your request for information under this paragraph is denied.

15.    Provide any appraisal, broker's price opinion, automated valuation model analysis, or other assessment of the value of the property securing my clients' mortgage loan that you obtained during the applicable period.

**RESPONSE:** Refer to the response to Question 6, above.

16.    Provide any notes or logs created by your personnel reflecting communications with my client about their request for loss mitigation assistance or about their default on the loan during the applicable period.

**RESPONSE:** Refer to the response to Question 14, above.

Please be guided accordingly.

Very truly yours,

Laura K. Conroy

Enclosure
cc:    Diane A. Bettino, Esq. (via interoffice mail)



Wells Fargo
PO Box 10335
Des Moines, IA 50306

May 26, 2016



Rudolph Covino
Anna Covino
Attn: Joseph A. Chang & Associates, LLC
951 Madison Ave.
Paterson, NJ 07501

Subject: Resolution to inquiry sent on behalf of Rudolph Covino -account number
XXXXXXXXX23860001

Dear Joseph A. Chang & Associates, LLC:

Thank you for the opportunity to address your concerns. We've carefully researched this matter and are providing you with a response.

We received an inquiry on April 14, 2016; however, the account is in active litigation. Here is the litigation information for your reference:

- Court: United States District Court , District of New Jersey
- County: Bergen County
- Case Number: 2:16-CV-02264-SRC-CLW
- Date of Filing: April 22, 2016
- Case Name: Rudolph Covino vs. Wells Fargo Bank

We won't be providing a response to your inquiry because the issues raised are the same or very closely related to the issues raised in the pending litigation. We've forwarded your inquiry to our litigation counsel to review during the pending litigation.

We value your feedback and appreciate the time and effort you took to contact us. It's been my goal to fully address the concerns you've brought to our attention.

If you have any questions, I'm here to help. You may reach me directly at 1-800-853-8516, extension 83541. I am available to assist you Monday through Friday, 10:00 a.m. to 7:00 p.m. Central Time.

DNG/co1737468/ge5253479/clWFE

Covino
May 26, 2016
Page 2

If you require immediate assistance and I am unavailable, other representatives are available to assist you at 1-800-853-8516, Monday through Friday, 7:00 a.m. to 7:00 p.m. Central Time.


Sincerely,

Iniubong Essien
Executive Resolution Specialist
Customer Care and Recovery Group

Enclosure(s)

Cc/ Enc:       Consumer Financial Protection Bureau, reference # 160317-000795 and
               160309-002184

Wells Fargo is required by the Fair Debt Collection Practices Act to inform you that, as the loan servicer, we are attempting to collect a debt, and any information obtained will be used for that purpose. However, if the borrower has received a discharge from bankruptcy, and the loan was not reaffirmed in the bankruptcy case, Wells Fargo will only exercise its rights against the property and is not attempting any act to collect the discharged debt from the borrower personally.

With respect to those loans located in the State of California, the state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact the borrower before 8 a.m. or after 9 p.m. They may not harass the borrower by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call the borrower at work if they know or have reason to know that they may not receive personal calls at work. For the most part, collectors may not tell another person, other than the attorney or borrower's spouse, about the debt. Collectors may contact another person to confirm the borrower's location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

DNG/co1737468/ge5253479/clWFE

# EXHIBIT D

# JOSEPH A. CHANG & ASSOCIATES, L.L.C.
## ATTORNEYS AT LAW

JOSEPH A. CHANG ◊
JC@JOSEPHCHANGLAW.COM

MICHAEL A. CASSATA ◊
MC@JOSEPHCHANGLAW.COM

KARENA J. STRAUB ·
KS@JOSEPHCHANGLAW.COM

JOSEPH M. BIMONTE ·
JB@JOSEPHCHANGLAW.COM



951 Madison Avenue, Paterson, New Jersey 07501
Tel. (973) 925-2525· Fax (973) 925-9090

Park 80 West, Plaza II, 250 Pehle Avenue, Suite 200
Saddle Brook, New Jersey 07663
www.josephchanglaw.com

◊ CERTIFIED BY THE SUPREME COURT OF
NEW JERSEY AS A CIVIL TRIAL ATTORNEY

· ADMITTED NY/NJ

☐ Please respond to
Paterson Office

**August 26, 2014**

## VIA EMAIL AND FEDERAL EXPRESS

M. Murphy Durkin, Esq.
Durkin & Durkin, LLP
1120 Bloomfield Avenue
West Caldwell, New Jersey 07007

RE:   Wells Fargo Bank, N.A., etc. v. Covino, et al.
Docket No.: F-56185-09

Dear Mr. Durkin:

Please be advised that this office represents the defendant, Robert Covino, in the above-referenced matter.  Mr. Covino appeared at our offices today to provide us with a copy of the Affidavit of Levy and Posting Advertisement of Sale on Real Property.

We have had the opportunity to review the First Amended Complaint filed by your office.  Your First Amended Complaint names Edward M. Covino and Robert Covino, as defendants.  Neither Edward M. Covino nor Robert Covino are parties to the loan transaction and neither party is the record owner of the property in question.  Your First Amended Complaint, together with each and every document thereafter filed has no basis in law or fact and irrefutably constitutes frivolous litigation in violation of R. 1:4-8 and N.J.S.A. 2A:15-59.1. We hereby provide you with notice that you immediately dismiss the within action against Messrs Covino within 28 days from today or sanctions will be sought pursuant to the Rules of Court and New Jersey law.

Pursuant to R. 1:4-8, this serves as notice to you and your law firm that within lawsuit filed by your firm in this matter constitutes frivolous litigation and expressly violates the provisions of R. 1:4-8. Plaintiff's allegations, as certified to by you, lack any evidentiary support. R. 1:4-8(a).

Pursuant to R. 1:4-8(b), you are hereby notified that we will, within a reasonable period of time thereafter, apply by motion for sanctions, including an award for attorney fees and costs, against you, your law firm and your client if this action is not dismissed within 28 days from your

## JOSEPH A. CHANG & ASSOCIATES, L.L.C.

M. Murphy Durkin, Esq.
August 26, 2014
Page 2

receipt of this letter. As an attorney licensed in New Jersey, you and your law firm have a joint responsibility not to pursue claims that you know are wholly unjustified under the law. Pursuant to R. 1:4-8(f), Robert Covino also expressly reserves his right to proceed against the plaintiff for the recovery of attorney fees and costs pursuant to the New Jersey Frivolous Lawsuits Statute, N.J.S.A. 2A:15-59.1.

Please be guided accordingly.

Very truly yours,

S/ Joseph A. Chang /dr

Joseph A. Chang

JAC:dr

cc:    Robert Covino

# EXHIBIT E

# JOSEPH A. CHANG & ASSOCIATES, L.L.C.
## ATTORNEYS AT LAW

JOSEPH A. CHANG *
JC@JOSEPHCHANGLAW.COM

MICHAEL A. CASSATA *
MC@JOSEPHCHANGLAW.COM

KARENA J. STRAUB •
KS@JOSEPHCHANGLAW.COM

JOSEPH M. BIMONTE *
JB@JOSEPHCHANGLAW.COM



◊ CERTIFIED BY THE SUPREME COURT OF
NEW JERSEY AS A CIVIL TRIAL ATTORNEY

* ADMITTED NY/NJ

951 Madison Avenue, Paterson, New Jersey 07501
Tel. (973) 925-2525• Fax (973) 925-9090

Park 80 West, Plaza II, 250 Pehle Avenue, Suite 200
Saddle Brook, New Jersey 07663
www.josephchanglaw.com

■ Please respond to
Paterson Office

### January 16, 2015

<u>VIA EMAIL, FACSIMILE AND FEDERAL EXPRESS</u>
M. Murphy Durkin, Esq.
Durkin & Durkin, LLP
1120 Bloomfield Avenue
West Caldwell, New Jersey 07007

     RE:   Wells Fargo Bank, N.A., etc. v. Covino, et al.
     Docket No.: F-56185-09

Dear Mr. Durkin:

Please recall that this office represents Robert Covino. As you may recall Mr. Covino resides in the premises owned by his now deceased parents. The Estate was only recently probated, despite his father's passing sometime ago. Mr. Covino is now in the process of administering the Estate and transferring the assets out of his parents' name into the remaining heirs.

We have obtained all of Mr. Covino's financials and, while in the process of preparing a modification application, noted that the loan at issue is a home equity line of credit. Our modification department, along with Mr. Covino, contacted Wells Fargo to determine what loss mitigation options were available for this HELOC. To further complicate the issue, Wells advised that since Mr. Covino is not the record owner of the property, they would be unable to entertain any loss mitigation efforts. To that end, I would request that you reach out to your client relative to the foregoing to determine what loss mitigation options are available to Mr. Covino.

To that end, we would request that the Sheriff's Sale scheduled for January 23, 2015 be once again adjourned. This adjournment would allow Mr. Covino to continue with his Estate administration. A Deed transferring the property from the Estate into Mr. Covino was transmitted for recordation. We await receipt of same.

## JOSEPH A. CHANG & ASSOCIATES, L.L.C.

M. Murphy Durkin, Esq.
January 16, 2015
Page 2

Of course, I would welcome the opportunity to further discuss this matter with you.

Thank you for your attention to this matter.

Very truly yours,

Joseph A. Chang

JAC:dr

cc:    Robert Covino