UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| ROBERT COVINO, et al., | Civil Action No.: 2:16-cv-02264 |
| --- | --- |
| Plaintiffs, | |
| v. | OPINION |
| WELLS FARGO BANK, | |
| Defendant. | |

**CECCHI, District Judge.**

## I. INTRODUCTION

This matter comes before the Court on the motion of Defendant Wells Fargo Bank ("Defendant") to dismiss Plaintiffs Robert Covino ("Covino") and Estate of Rudolph Covino's (collectively with Covino, "Plaintiffs") second amended complaint. (ECF No. 22). Pursuant to Federal Rule of Civil Procedure 78(b), no oral argument was heard. For the reasons set forth below, Defendant's motion to dismiss is granted in part and denied in part.

## II. BACKGROUND

On October 16, 2004, Anna M. Covino and Rudolph Covino executed a note and mortgage in favor of Wachovia Bank, N.A.[1] against the property located at 6 Andover Avenue, Dumont, New Jersey. (ECF No. 21 ¶¶ 1, 15, 70). In 2006, Anna M. Covino passed away and in 2008, Rudolph Covino passed away. (*Id.* ¶ 16). Plaintiffs aver that Covino and his brother, Edward Covino, "are the sole beneficiaries of their deceased parents' Estate." (*Id.*).

---

[1] On October 3, 2008, Wachovia Bank, N.A. and Defendant merged. (ECF No. 21 ¶ 19). As a result, Defendant became the successor-in-interest to Wachovia Bank, N.A. (*Id.* ¶ 4). Accordingly, the Court will refer to Defendant throughout this Opinion, rather than differentiating between Defendant and Wachovia Bank, N.A., as the parties do not dispute that Defendant is the appropriate party in this matter. (*Id.* ¶ 19).

After Covino's parents passed away, "[t]he mortgage loan in question went into a default status[.]" (*Id.* ¶ 17). According to Plaintiffs, "[o]n or about October 23, 2009 . . . [Defendant] instituted [a] foreclosure suit against Anna M. Covino," but did not name Rudolph Covino or the Estate of Rudolph Covino in the foreclosure action. (*Id.* ¶¶ 18, 20-21). Thereafter, "[o]n April 21, 2010, six months after the filing of the initial Complaint, [Defendant] filed a First Amended and Restate[d] Complaint in Foreclosure," (*id.* ¶ 24), "nam[ing] Robert Covino and Edward Covino as direct party defendants purportedly as the beneficiaries of the Estate of Rudolph Covino." (*Id.* ¶ 25).

Plaintiffs maintain that Covino, "at all times relevant hereto, made numerous attempts through counsel to resolve the default and amicably resolve the foreclosure," (*id.* ¶ 29), including by "request[ing] information and documentation to enable [Covino] to become current on the property and assume the mortgage in his name, alone." (*Id.* ¶ 30). "On February 4, 2015[, however, Defendant] advised counsel for . . . Covino . . . that [Defendant] would not modify the mortgage loan because . . . Covino was not the original debtor," (*id.* ¶ 34), and that Defendant "could only modify the mortgage loan if the Estate had assets." (*Id.* ¶ 35).

Through additional correspondence with Defendant, Covino submitted a loan modification application on behalf of his deceased parents, (*id.* ¶¶ 36-37), which was denied, (*id.* ¶¶ 38, 40), as they did "not meet the requirements of the Home Affordable Modification Program because . . . [their] current monthly payment [was] less than 25% of [their] monthly income." (ECF No. 21-1 at 13). Covino appealed such denial, (ECF No. 21 ¶ 41), which was also denied. (*Id.* ¶¶ 42, 46). On May 5, 2014, a final judgment and a writ of execution were entered in state court against Covino. (*Id.* ¶ 45). Thereafter, Covino submitted to Defendant a Notice of Error ("NOE") and Request for Information ("RFI") seeking answers to questions and the production of information

with respect to sixteen different issues. (*Id.* ¶ 46; *see also* ECF No. 21-1 at 25-27). Defendant acknowledged receipt of the NOE and RFI; however, Plaintiffs aver that they never received a response. (ECF No. 21 ¶ 49).

Thereafter, Plaintiffs attest that they sent another NOE to Defendant on August 7, 2015, (*id.* ¶ 50), to which Defendant acknowledged receipt and replied. (*Id.* ¶¶ 51-54, 56). Nonetheless, Plaintiffs contend that "[n]othing contained in any of the correspondence transmitted by [D]efendant[ was] responsive to [P]laintiffs' multiple RFI's and NOE's." (*Id.* ¶ 57; *see also id.* ¶¶ 58-62). "On or about October 20, 2015, [P]laintiffs made another attempt to obtain loss mitigation information and documentation," (*id.* ¶ 64), but Plaintiffs maintain that Defendant failed to respond. (*Id.*). On October 23, 2015, Defendant scheduled a foreclosure sale, (*id.* ¶ 65), which according to Defendant, was stayed multiple times at the request of Plaintiffs. (ECF No. 22-1 at 4). Covino subsequently sent additional NOEs to Defendant, which Plaintiffs attest Defendant has not responded to adequately or at all. (ECF No. 21 ¶¶ 67-69).

Plaintiffs filed this action against Defendant on April 21, 2016. (ECF No. 1). According to Defendant, such filing was submitted after the Chancery Judge advised Covino that he would not adjourn the foreclosure sale past April 29, 2016. (ECF No. 22-1 at 4). On April 29, 2016, the foreclosure sale was complete. (*Id.* at 1). Thereafter, Plaintiffs twice amended their complaint, (ECF Nos. 12, 21), and Defendant filed a motion to dismiss Plaintiffs' second amended complaint, (ECF No. 22), which is currently before the Court. Plaintiffs allege in their second amended complaint violations of the Real Estate Settlement Procedures Act ("RESPA")[2] and the regulations

---

[2] Count one of Plaintiffs' second amended complaint "is titled as a claim under RESPA, the Dodd-Frank Act and the Truth in Lending Act ("TILA")." (ECF No. 22-1 at 22-23 n.4). Nonetheless, count one appears to only allege a claim under RESPA. That is, no allegations seem to be set forth

3

promulgated thereunder, (e.g., Regulation X), and the New Jersey Consumer Fraud Act ("NJCFA").[3] (ECF No. 21).

III. **LEGAL STANDARD**

   A. **Federal Rule of Civil Procedure 12(b)(1)**

A court must grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) if the court determines that it lacks subject-matter jurisdiction over a claim. *See In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). "Generally, where a defendant moves to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction, the plaintiff bears the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction." *The Connelly Firm, P.C. v. U.S. Dep't of the Treasury*, No. 15-2695, 2016 WL 1559299, at *2 (D.N.J. Apr. 18, 2016) (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000)).

The first step in evaluating a 12(b)(1) motion is determining whether the 12(b)(1) motion presents a facial attack or a factual attack. *See Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357-58 (3d Cir. 2014). "A facial attack, as the adjective indicates, is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court[.]" *Id.* at 358. "A factual attack, on the other hand, is an argument that there is no subject matter jurisdiction because the facts of the case[.]" *Id.* For facial attacks, "the court must consider

---

under either TILA or the Dodd-Frank Act. Accordingly, the Court will only address count one of Plaintiffs' second amended complaint under RESPA and the regulations promulgated thereunder, (e.g., Regulation X), which the Court will refer to colloquially as Plaintiffs' "RESPA claims."
[3] Plaintiffs' second amended complaint also alleges that Defendant violated Plaintiffs' due process rights; however, Plaintiffs voluntarily withdrew this count. (ECF No. 29 at 32 ("Plaintiffs withdraw count three of their SAC alleging violation of due process.")).

4

the allegations of the complaint as true." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). For factual attacks, however:

> [T]here is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*Id.*; *see also Hood v. Mercer–Bucks Orthopaedics*, No. 14-3427, 2014 WL 5465879, at *3 (D.N.J. Oct. 28, 2014) (holding that for factual attacks, courts are permitted "to weigh and consider facts 'outside the pleadings' to decide whether subject matter jurisdiction is proper") (citations omitted).

### B. Federal Rule of Civil Procedure 12(b)(6)

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Furthermore, "[a] pleading that offers 'labels and conclusions' . . . 'will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations omitted).

### IV. DISCUSSION

#### A. The *Rooker-Feldman* Doctrine

Defendant first contends that this Court lacks subject matter jurisdiction over this matter under the *Rooker-Feldman* doctrine.

5

> [F]our requirements . . . must be met for the *Rooker-Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments;' (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments.

*Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (citations omitted). "The second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim." *Id.*

The *Rooker-Feldman* doctrine does not bar Plaintiffs' RESPA claims because Plaintiffs are "not inviting the district court to review and reject any state judgment under this cause of action." *Alfaro v. Wells Fargo N.A.*, No. 16-7950, 2017 WL 4969334, at *3 (D.N.J. Nov. 1, 2017). Plaintiffs concede that "[t]he foreclosure proceeded in its normal course," and assert that they are neither "'complaining of injuries' caused by the foreclosure," nor "seeking this Honorable Court to review and reject the State Court judgment." (ECF No. 29 at 9-12). Rather, Plaintiffs seek an award of damages under certain provisions of RESPA. (ECF No. 21 at 21-22; *see also* ECF No. 29 at 23 ("Plaintiffs[' second amended complaint] does not request an invalidation of the Note and Mortgage nor does it seek to vacate, set aside or otherwise overturn the Final Judgment.")). "A careful review of the pleadings confirms that adjudicating [Plaintiffs' RESPA claims] would not be inconsistent with the existence of a valid mortgage or the state court's foreclosure judgment." *Alfaro*, 2017 WL 4969334, at *3 (citing *Great W. Mining*, 615 F.3d at 167 ("When . . . a federal plaintiff asserts injury caused by the defendant's actions and not by the state-court judgment, *Rooker-Feldman* is not a bar to federal jurisdiction.")). Accordingly, the Court finds that Plaintiffs' RESPA claims are not barred by the *Rooker-Feldman* doctrine.

Nonetheless, the Court finds that Plaintiffs' NJCFA claim "is indirectly inviting this Court to review and reject the state judgment." *Id.* Plaintiffs allege that Defendant violated the NJCFA

6

by engaging in "an unconscionable practice" by "continu[ing] to proceed with the foreclosure and scheduling of a Sheriff's Sale while . . . Covino's modification application was pending" and "permitt[ing] the property in question to be sold through Sheriff's Sale" knowing that "Covino was not obligated on the Note and Mortgage" and that "Covino was a successor-in-interest in and to the property in question[.]" (ECF No. 21 ¶¶ 101-05; *see also id.* ¶¶ 106-07 ("Plaintiffs made several attempts to obtain a loan modification to which . . . [D]efendant improperly rejected. Defendant set forth a Sheriff's Sale and foreclosure suit without attempting to remedy the defaulted loan with . . . Covino, as successor-in-interest.")). "Plaintiffs' allegations with regard to Defendant's alleged fraudulent conduct essentially challenge the state court's findings, because they assert that Defendant[] fraudulently obtained the foreclosure judgment." *Duffy v. Wells Fargo Bank, N.A.*, No. 16-4453, 2017 WL 2364196, at *7 (D.N.J. May 31, 2017). Accordingly, Plaintiffs' NJCFA claim is barred by the *Rooker-Feldman* doctrine. *See id.* (dismissing plaintiffs' NJCFA claim as precluded by the *Rooker-Feldman* doctrine because "[p]laintiffs claim[ed] that [d]efendant[] d[id] not have the right to foreclosure, despite the fact that the state court . . . held that [defendant could] legally take possession of the [p]roperty" and therefore "[p]laintiffs' NJCFA claim . . . [was] inextricably intertwined with the state court judgment, and [was] barred by *Rooker-Feldman*"); *Alfaro*, 2017 WL 4969334, at *3 (also dismissing plaintiff's NJCFA claim as precluded by the *Rooker-Feldman* doctrine where plaintiff attacked defendant's denial of her loss mitigation application and securement of a final judgment and writ of execution).

### B. The Entire Controversy Doctrine, *Res Judicata* and Collateral Estoppel, and *Colorado River* Abstention

Defendant also contends that the Court should dismiss Plaintiffs' second amended complaint pursuant to the entire controversy doctrine, *res judicata* and collateral estoppel, and *Colorado River* abstention.

"The entire controversy doctrine does not apply to bar component claims that are unknown, unarisen, or unaccrued at the time of the original action." *In re Mullarkey*, 536 F.3d 215, 229 (3d Cir. 2008). Here, the final judgment and writ of execution occurred on May 5, 2014. (ECF No. 21 ¶ 45). Plaintiffs' claims under RESPA, however, pertain to at least some NOEs and RFIs submitted to Defendant after such date. (*See* ECF No. 21-1 at 25-27 (June 30, 2015), 32-33 (August 7, 2015), 44-45 (October 20, 2015), 47-50 (February 18, 2016), 52 (March 9, 2016)). Accordingly, the Court finds that Plaintiffs' RESPA claims "did not ripen before the foreclosure proceedings concluded" and that therefore, the entire controversy doctrine does not apply. *Alfaro*, 2017 WL 4969334, at *4.

This same analysis applies to Defendant's contention that Plaintiffs' RESPA claims are barred by *res judicata* and collateral estoppel. Again, the factual allegations in support of Plaintiffs' RESPA claims pertain to events that occurred after the final judgment and writ of execution were entered in the foreclosure action. *See supra*. "Accordingly, it is simply unclear how this case arises from the same transaction or occurrence as the claims in the first action (for purposes of *res judicata*) or how issues in this matter are identical to the issues decided in the foreclosure action (for purposes of collateral estoppel)." *Alfaro*, 2017 WL 4969334, at *5. Therefore, the Court finds that Plaintiffs' RESPA claims are neither barred by *res judicata* nor collateral estoppel.

Finally, the Court finds "that *Colorado River* abstention does not apply [to Plaintiffs' RESPA claims] because nothing in the pleadings or submissions suggests that [Plaintiffs] seek[] to revisit the determinations made in the foreclosure action." *Id.* As stated previously, Plaintiffs concede that "[t]he foreclosure proceeded in its normal course," and assert that they are neither "'complaining of injuries' caused by the foreclosure," nor "seeking this Honorable Court to review

8

and reject the State Court judgment." (ECF No. 29 at 9-12). "The foreclosure action is indisputably over; parallel litigation isn't pending in state and federal courts." *Alfaro*, 2017 WL 4969334, at *5. Thus, the Court finds that *Colorado River* abstention does not bar this Court's review of Plaintiffs' RESPA claims.

### C. Plaintiffs' Remaining Claims Under RESPA

The Court must now turn to the issue of whether Plaintiffs' remaining claims under RESPA otherwise survive dismissal. As a preliminary matter, the Court notes that Defendant moves to dismiss Plaintiffs' RESPA claims under 12 C.F.R. § 1024.41(g). (ECF No. 22-1 at 23). Nowhere in Plaintiffs' second amended complaint, however, do Plaintiffs appear to bring such a claim. (*See* ECF No. 21 ¶¶ 88-98 (alleging violations of RESPA under 12 C.F.R. §§ 1024.35, 1024.36, and 1024.38)).[4] Accordingly, the Court will proceed to determining whether Plaintiffs' claims under 12 C.F.R. §§ 1024.35, 1024.36, and 1024.38 otherwise survive dismissal.

Plaintiffs bring a cause of action under 12 C.F.R. § 1024.38, which at the time Plaintiffs filed their second amended complaint provided in relevant part that "[a] servicer shall maintain policies and procedures that are reasonably designed to achieve the objectives set forth in paragraph (b) of this section." 12 C.F.R. § 1024.38(a) (2014).[5] One of the objectives in paragraph (b) stated that: "[t]he policies and procedures required by paragraph (a) of this section shall be reasonably designed to ensure that the servicer can . . . . [u]pon notification of the death of a

---

[4] The only mention of 12 C.F.R. § 1024.41(g) that Plaintiffs make is in their opposition brief, in which Plaintiffs state that Defendant, "in its arguments surrounding 12 CFR § 1024.41(g) and 12 CFR § 1024.35, limit the entirety of each Regulation." (ECF No. 29 at 27). "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (alteration in original) (citations omitted).

[5] Such regulation has since been amended; however, these amendments do not impact the Court's conclusion.

9

borrower, promptly identify and facilitate communication with the successor in interest of the deceased borrower with respect to the property secured by the deceased borrower's mortgage loan." 12 C.F.R. § 1024.38(b)(1)(vi) (2014).[6]

Indeed, and as contemplated by Plaintiffs, their RESPA claims under 12 C.F.R. § 1024.38 must be dismissed. (*See* ECF No. 35 at 8 (Plaintiffs conceding that "the CFPB expressly states that certain regulations do not contain a private right of action, such as 12 C.F.R. § 1024.38[.]")). "[T]here is no private right of action to enforce § 1024.38. The CFPB explicitly crafted the regulation not to provide for private enforcement." *Joussett v. Bank of Am., N.A.*, No. 15-6318, 2016 WL 5848845, at *5 (E.D. Pa. Oct. 6, 2016); *Plouffe v. Bayview Loan Servicing, LLC*, No. 15-5699, 2018 WL 2984874, at *20 (E.D. Pa. June 13, 2018) ("The CFPB's interpretations of Regulation X explicitly state that government regulators enforce section 1024.38, and that the provision does not provide a private right of action. Further, courts have consistently found that there is no private right of action under section 1024.38."). "Because with limited exceptions 'private rights of action to enforce federal law must be created by Congress,' [Plaintiffs'] § 1024.38 claim fails and will be dismissed[.]" *Joussett*, 2016 WL 5848845, at *5 (citations omitted).

Plaintiffs also assert that Defendant has violated 12 C.F.R. §§ 1024.35 and 1024.36, by "failing to properly respond to multiple NOEs from . . . [P]laintiffs[.]" (ECF No. 21 ¶ 96). Defendant argues that Plaintiffs' RESPA claims should be dismissed because "Plaintiffs' correspondence [did] not qualify as a [Qualified Written Request ("QWR")] under Section 1024.36 or a[n NOE] under Section 1024.35 for the simple reason that Plaintiffs [were] not 'borrowers'

---

[6] *See supra* n.4.

under RESPA[.]" (ECF No. 36 at 2). According to Defendant, because at the time Plaintiffs were corresponding with Defendant, "[o]nly a 'borrower' [could] send a QWR or [NOE] and recover for a violation of RESPA," Plaintiffs' RESPA claims must be dismissed. (*Id.* at 3).

Plaintiffs' RESPA claims are brought under 12 C.F.R. §§ 1024.35 and 1024.36. "Those provisions describe the duties owed by mortgage loan servicers to 'borrowers.' RESPA itself also speaks of the duties owed by loan servicers to borrowers. And, when those duties are breached, RESPA establishes that a violator is liable to a borrower." *Sharp v. Deutsche Bank Nat'l Tr. Co.*, No. 14-369, 2015 WL 4771291, at *4 (D.N.H. Aug. 11, 2015).

Here, while Plaintiffs contend that "Covino, by virtue of his inheritance, stepped into the shoes of the original borrowers – his parents," (ECF No. 35 at 7), Plaintiffs specifically allege "that the mortgage and note were not held in . . . Covino's name but, rather, in the name of his now deceased parents." (ECF No. 21 ¶ 58; *see also id.* ¶¶ 61-62 ("Covino did not default on the mortgage note as the mortgage note was not in his name . . . . Covino was not the mortgagor."); *id.* ¶ 102 ("Covino was not obligated on the Note and Mortgage.")). Moreover, Plaintiffs' averment that Covino, as a result of the death of his parents, automatically replaced his parents in matters involving the mortgage and note, "is a statement of law, not fact[.]" *Green v. Cent. Mortg. Co.*, No. 14-4281, 2015 WL 5157479, at *5 (N.D. Cal. Sept. 2, 2015). Indeed, Plaintiffs' allegations directly conflict with paragraph 9 of the mortgage, which states that "any Successor in Interest of Borrower who assumes Borrower's obligations under this Mortgage *in writing, and is approved by Lender*, shall obtain all of Borrower's rights and benefits under this Mortgage." (ECF No. 21 ¶ 71) (emphasis added). "Other courts have found that a successor in interest does not assume a borrower's obligations simply upon obtaining title to property when the deed of trust requires an assumption be made in writing and approved by the lender." *Green*, 2015 WL

11

5157479, at *5 (citing cases). "Accordingly, the [C]ourt rejects [Plaintiffs'] argument that [Covino], as a successor in interest, is the 'borrower' under" RESPA. *Id.*; *see also Sharp*, 2015 WL 4771291, at *6 (denying plaintiff's motion to amend on the basis of futility where plaintiff could not allege that he was a borrower under RESPA); *Singh v. Wells Fargo Bank N.A.*, No. 11-401, 2011 WL 2118889, at *4 (E.D. Cal. May 27, 2011) ("Regardless of the particular section identified by plaintiff, the RESPA claim must fail because he is not a borrower on the loan."), *report and recommendation adopted*, No. 11-401, 2011 WL 2784592 (E.D. Cal. July 11, 2011); *Wilson v. JPMorgan Chase Bank, NA.*, No. 09-863, 2010 WL 2574032, at *9 (E.D. Cal. June 25, 2010) ("Plaintiff's RESPA claim must fail because she explicitly alleges that she was 'not a borrower of the loan.' Under RESPA, a servicer only has the duty to respond to QWRs sent 'from the borrower,' and accordingly defendant was under no obligation to respond to plaintiff's QWR."); *Nelson v. Nationstar Mortg. LLC*, No. 16-307, 2017 WL 1167230, at *3 (E.D.N.C. Mar. 28, 2017) ("Because plaintiff did not sign the promissory note and has not assumed the loan, she is not a borrower under RESPA.").[7]

---

[7] The Court recognizes that the "Amendments to the 2013 Mortgage Rules[, which went into effect on April 19, 2018,] . . . might [have] enable[d Covino] to state a claim under RESPA[.]" *Spaulding v. Citifinancial Servicing, LLC*, No. 16-30173, 2018 WL 1698263, at *4 (D. Mass. Apr. 6, 2018); *see also* (ECF No. 36 at 5 (Defendant explaining that "[h]ad the events underlying this case occurred after April 19, 2018, Plaintiffs might have had standing to sue [Defendant] in their capacity as 'confirmed successors in interest,' a term and definition added to Regulation X effective April 19, 2018.")). Nonetheless, "[r]etroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). "The Consumer Financial Protection Board [("CFPB")] announced an effective date 18 months after publication for its new rules governing a mortgagor's and loan servicer's obligations to a successor in interest under RESPA . . . an effective date that was considerably later than effective dates for other portions of the 2013 Mortgage Rule Amendments—acknowledging the volume of commentary on these particular regulatory changes and the industry's need to adopt conforming policies and procedures. The retroactive application of these definitional revisions

However, Plaintiffs' RESPA claims are also brought by Covino as the executor of the estate of Rudolph Covino. (ECF No. 21). "A servicer has an obligation to respond to a qualified written request sent by the borrower or *an agent of the borrower*." *Kralovic v. JP Morgan Chase Bank, N.A.*, No. 14-758, 2015 WL 252315, at *4 (N.D. Ohio Jan. 20, 2015) (emphasis added). District courts have interpreted "an agent of the borrower" to include an administratrix or an executor of a deceased's estate. *See id.*; *see also Wilson v. Bank of Am., N.A.*, 48 F. Supp. 3d 787, 797 (E.D. Pa. 2014) ("Were Plaintiff merely the heir to the Estate, she could not pursue her claims. In her legal capacity as the Administratrix of the Estate, however, Plaintiff has standing to bring the enumerated claims."). Because Rudolph Covino, one of the borrowers in this case, was deceased, and because Covino, his next of kin and the executor of his estate, sent requests to Defendant, it would appear, based on the facts set forth in the second amended complaint, that such requests were made by an agent of the borrower. "Therefore, in so far as the motion to dismiss the RESPA claims is based on a purported lack of standing, or the failure to submit a qualified written request, the motion is denied." *Kralovic*, 2015 WL 252315, at *4.

Defendant's additional arguments in support of dismissing the RESPA claims would obligate the Court to make factual determinations, which is inappropriate at this stage of the litigation. Deciding if Covino's correspondence: (1) constituted a challenge to Defendant's denial of the loan modification application; (2) requested information not directly related to servicing of the loan or the mortgage loan account; or (3) sought overbroad, unduly burdensome, confidential,

---

would have the effect of 'increas[ing] a party's liability for past conduct.' 'If such ramifications loom, the default rule is that the statute [or regulation] should not be construed to regulate the past conduct.'" *Spaulding*, 2018 WL 1698263, at *4 (citations omitted). Accordingly, in the absence of any contrary authority cited by Plaintiffs, "the application of the default rule [is appropriate] here, which cautions against retroactive application of the broader definition of the term 'borrower' in Regulation X." *Id.*

13

or proprietary information implicates "factual material which, to be considered, would require the Court to convert Defendant['s] Motion to Dismiss into a Motion for Summary Judgment." *Smith v. Church St. Corp.*, No. 06-966, 2006 WL 1307714, at *2 (D.N.J. May 8, 2006); *see also Kralovic*, 2015 WL 252315, at *5 ("Determining whether the [RESPA] requests were specific enough to trigger a duty to respond beyond what was received from [defendant], determining whether a sufficient investigation was conducted, and determining whether the fees and charges mentioned were properly documented are all questions of fact that can be better addressed through discovery and trial."). Accordingly, Defendant's motion to dismiss Plaintiffs' RESPA claims, as brought by Covino as the executor of Rudolph Covino's estate, is denied.

## V. **CONCLUSION**

For the reasons set forth above, Defendant's motion to dismiss is granted in part and denied in part. An appropriate Order accompanies this Opinion.

DATED: September 26, 2018

　　　　　　　　　　　　　　　　　　　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
　　　　　　　　　　　　　　　　　　　　**CLAIRE C. CECCHI, U.S.D.J.**